**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| CHERYL BENDETSEN, BARBARA MAROVICH, JANICE CURRAN, FRED ESTAÑO, TAMMARA COOK, and MARYSOL CHAPARRO, *Plaintiffs*, v. UNITED AIRLINES, INC., *Defendant*. | Case No. 2:23-CV-1553 |

**COMPLAINT AND DEMAND FOR JURY TRIAL**

1. Plaintiffs Cheryl Bendetsen, 1306 Greenridge Road, Jacksonville, FL 32207, Barbara Marovich, 2420 N E 34th Ct., Lighthouse Point, FL 33064, Janice Curran, 14 Pump Street, Newcastle, ME 04553, Fred Estaño, 1827 East Ocean Blvd. Apt. #3, Long Beach, CA 90802, Tammara Cook, 1041 Nona Drive, Athens, GA 30606, Marysol Chaparro, 1909 Riverlawn Drive, Kingwood, TX 77339, bring this action against Defendant United Airlines, Inc. ("United"), 233 South Wacker Drive, 14th Floor, Chicago, IL 60606, for violations of the Age Discrimination in Employment Act of 1967, 29 U.S.C. §§ 621 *et seq.* ("ADEA"), and New Jersey's Law Against Discrimination, N.J.S.A. 10:5-1 *et seq.* ("NJLAD").

**NATURE OF THE ACTION**

2. Until their involuntary termination from employment by United, plaintiffs were senior flight attendants/Pursers employed by United, with spotless service records of up to 55 years each. Their demise was caused, purely and simply, by United's purge of older, senior workers in favor of younger, junior flight attendants. In this case, junior flight attendants, in violation of company privacy policy, engaged in activity aimed at costing older flight attendants

1

their jobs. When plaintiffs engaged in private communications among themselves concerning their jobs, United surreptitiously obtained snippets of the communications and conducted pretextual, rump proceedings ending in the firing of each of the plaintiffs. The evidence shows two distinctly pernicious strains of age discrimination: 1) the extreme punishment of summary dismissal of plaintiffs for minor, questionable "offenses" is way out of line with far lesser penalties exacted against young flight attendants for truly serious offenses; and 2) United has a highly reticulated progressive disciplinary system, with built in due process protections, that was bypassed in the case of the older flight attendants.

## JURISDICTION AND VENUE

3. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331, 1337, 2201, 29 U.S.C. § 626(c), and N.J.S.A. 10:5-13.  The Court has supplemental jurisdiction over the claims arising under the NJLAD pursuant to 28 U.S.C. § 1367.

4. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b).

## PARTIES

5. All plaintiffs worked as flight attendants for United, and worked as Pursers on United flights. In the Purser position, in addition to performing regular flight attendant duties, plaintiffs were responsible for coordinating and directing the activities of the cabin crew, and for completing all required reports and documentation. At the times relevant to this lawsuit, plaintiffs' base of employment with United was at Newark Liberty International Airport in Newark, New Jersey ("EWR").

6. Plaintiffs were long-term employees of United, serving up to 55 years each. Each performed her or his flight attendant duties satisfactorily and received numerous awards and accolades in connection with job performance. Until their involuntary employment terminations challenged here, none had received discipline resulting in a loss of pay or warning that would

result in termination on further offense.

7. Plaintiff Cheryl Bendetsen, born in 1944, was a Purser employed by United based at EWR until the time of her involuntary termination from employment on May 21, 2021. Plaintiff Bendetsen worked as a flight attendant for 55 years, 35 with United and 20 with Pan American World Airways, Inc. In recent years she worked as a Purser on United satisfactorily and received numerous awards and accolades in connection with her job performance. Until her involuntary termination challenged here, she had not received any discipline resulting in a loss of pay or warning that would result in termination on further offense.

8. Plaintiff Barbara Marovich, born in 1960, was a Purser employed by United based at EWR until the time of her involuntary termination from employment on May 21, 2021. Plaintiff Marovich worked as a flight attendant for United for 33 years, and worked as a Purser on United flights for almost 23 of those years. Throughout her career as a United flight attendant, she performed her duties satisfactorily and received numerous awards and accolades in connection with her job performance. Until her involuntary termination challenged here, she had no performance infractions and had not received any discipline resulting in a loss of pay or warning that would result in termination on further offense.

9. Plaintiff Janice Curran, born in 1953, was a Purser employed by United based at EWR until the time of her involuntary termination from employment on May 21, 2021. Plaintiff Curran had approximately 44 years of exemplary and continuous flight attendant service, including many years of Purser service. Until her involuntary termination challenged here, she had no performance infractions and had not received any discipline resulting in a loss of pay or warning that would result in termination on further offense.

10. Plaintiff Fred Estaño, born in 1959, was a Purser employed by United based at EWR until the time of his involuntary termination from employment on May 14, 2021. Plaintiff

Estaño had 31 years of exemplary flight attendant service, the entire time during which he served as Purser. Until his involuntary termination challenged here, he had no performance infractions and had not received any discipline resulting in a loss of pay or warning that would result in termination on further offense.

11.    Plaintiff Tammara Cook, born in 1952, was a Purser employed by United based at EWR until the time of her involuntary termination from employment on May 14, 2021. Plaintiff Cook had 35 years of flight attendant service, and worked all of those years as a Purser on United flights. Until her involuntary termination challenged here, she had no performance infractions and had not received any discipline resulting in a loss of pay or warning that would result in termination on further offense.

12.    Plaintiff Marysol Chaparro, born in 1965, was a Purser employed by United based at EWR until the time of her involuntary termination from employment on May 14, 2021. Plaintiff Chaparro had 26 years of flight attendant experience, and for 24 of those years worked as a Purser on United flights. Until her involuntary termination challenged here, she had no performance infractions and had not received any discipline resulting in a loss of pay or warning that would result in termination on further offense.

13.    Defendant United Airlines ("United") is a subsidiary of United Airlines Holdings, Inc., a publicly held company based in Chicago, Illinois, and is a global commercial airline. United is a "carrier" as that term is defined in Title II, Sections 201 and 202 of the Railway Labor Act ("RLA"), 45 U.S.C. §§ 181, 182. United does business in this judicial district, including maintaining a flight attendant base of employment at EWR.

## ADDITIONAL FACTUAL ALLEGATIONS

14. Plaintiffs are exceptional employees with exceptional service records in terms of job performance, near perfect attendance, and discipline-free service. The Purser job itself is a position of leadership from the standpoint of safety and crew duties. Plaintiffs all have long periods of service, averaging over 37 years of flight attendant service. Their employee files are filled with recognitions by passengers, crewmembers, and management alike, not only of their outstanding service and professional courtesy, but also instances of actions to deal with safety issues and illness on board.

15. Plaintiffs' termination from employment stemmed from their participation in a two-hour private WhatsApp chat among Newark-based United Pursers on March 6, 2021. The WhatsApp group was formed to discuss work matters and was open to around 50 EWR Pursers. Most of the chats were devoted to best practices for Purser duties and updates on United company policies.

16. The March 6, 2021 chat included discussions of concerns of actions taken against older, senior flight attendants by a young, junior United flight attendant in his thirties, Kristof Hering. In violation of United company policy to protect the privacy of its employees, Hering had taken photographs of crewmembers who allegedly were in violation of the requirement to wear covid masks. Hering posted photos of United crewmembers on Facebook social media, with their faces clearly visible. As one older, well-respected Purser from the Washington Dulles base lost his position over a "mask violation" engineered by Hering, the Newark group became increasingly concerned that they would be targeted, amid rumors that Hering was going to transfer to Newark.

17. The WhatsApp chat had an administrator who set rules for the group:

--Do not discuss the group with others

      --Do not share private information

      --Do not copy posts without permission

18. Despite these rules, an unknown source took selective screenshots of the WhatsApp chat of March 6, 2021, and they were sent to United. The following month, United began the campaign of terminating the plaintiffs. United initially accused plaintiffs of bullying and harassment of Hering, and later harassment and retaliation. However, none of the plaintiffs knew Hering or had contact with him, directly or through written communications. Thus, the characterizations of plaintiffs' actions toward Hering are totally false and did not occur, making United's accusations and reasons for termination wholly pretextual.

19. In terms of potential harm from publication, there is a vast difference between a private WhatsApp chat and a public social media account posting on the internet, such as Facebook or Instagram. In the case of the WhatsApp chat, even after some anonymous source—whom United refused to identify—provided hand-picked selections of the March 6, 2021 conversation to United, the chat was not published, so any arguable fallout from publication did not occur.

20. By contrast, publication on many United flight attendant-related public Facebook pages by younger, junior United crewmembers causes real harm, but goes unpunished. There were especially egregious comments made on a public Facebook page titled "The Forgotten 5500." These were the most junior 5,500 United flight attendants furloughed during the pandemic. Hering was an active member of this page. There were threats of bodily harm, extensive harassment and a barrage of insults directed at the "Senior Mamas." The difference in treatment between the older plaintiffs and younger flight attendants is evidence of age discrimination.

21. The more favorable treatment of employees outside the protected class in similar circumstances is further evidence of discrimination. Here, Hering himself, in clear violation of United policy, took photos of United crewmembers and posted them on public social media. Not only was Hering not fired, as were the plaintiffs, but shortly after the plaintiffs' employment was terminated, Hering was rewarded with an in-flight supervisory position.

22. The discrimination against plaintiffs on the basis of age continued during United's investigation and termination process. When United conducts an investigation which may lead to disciplinary action or discharge of a flight attendant, it schedules an investigatory meeting. Prior to the meeting, United is required to provide to the flight attendant copies of all documents, reports, statements, or other information that the company intends to use as a basis for questioning or disciplining the flight attendant. In the investigations of the plaintiffs, the required information was missing, incomplete, or partially provided only minutes before the meeting.

23. In the "investigation" of plaintiffs by United, plaintiffs asserted their rights to communicate freely among themselves and to be free from discriminatory accusations and severe punishment. United used plaintiffs' responses in the investigation as additional reasons to terminate their employment. United's actions in this regard were in retaliation for plaintiffs' exercising their lawful right to be free from age discrimination.

24. One of the pillars of United's flight attendant disciplinary system is progressive discipline. Such a practice was not followed in plaintiffs' cases, where the punishment for a first offense was termination of employment. Younger flight attendants have not been subjected to such harsh treatment. Instead, the system of progressive discipline calls for warnings in the case of initial violations.

25. The actions of United against plaintiffs alleged here were taken because of their

age. Plaintiffs' age was a motivating factor in United's actions. But for their age, plaintiffs would not have been terminated from their employment or received undue harsh discipline.

26. United's actions against plaintiffs alleged here were willful and intentional, and were taken knowingly and in reckless disregard of federal and state law protecting against age discrimination.

27. As a result of United's actions against plaintiffs alleged here, plaintiffs have suffered damages and other injuries, including but not limited to monetary loss, lost career opportunities, and emotional pain and suffering.

## COUNT ONE – VIOLATION OF ADEA

28. Plaintiffs incorporate by reference paragraphs 1-27 as if restated fully herein.

29. The ADEA, 29 U.S.C. § 623(a), makes it unlawful for an employer—

> (1) to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age;
>
> (2) to limit, segregate, or classify his employees in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's age; …

30. The ADEA, 29 U.S.C. § 623(d), provides:

> It shall be unlawful for an employer to discriminate against any of his employees . . . because such individual . . . has opposed any practice made unlawful by this section, or because such individual . . . has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or litigation under this chapter.

31. By its actions alleged here in disciplining plaintiffs and in terminating plaintiffs' employment, United has violated 29 U.S.C. §§ 623(a) and (d), willfully and intentionally, treating plaintiffs less favorably than similarly situated younger employees. Plaintiffs' age was a motivating factor in United's actions against them. But for their age, they

would not have been terminated from their employment.

32. As a result of United's actions alleged here, plaintiffs have suffered damages and other injuries, including but not limited to monetary loss, lost employment opportunities, and emotional pain and suffering.

### COUNT TWO – VIOLATION OF NJLAD

33. Plaintiffs incorporate by reference paragraphs 1-32 as if restated fully herein.

34. The NJLAD provides, N.J.S.A. 10:5-12:

> It shall be an unlawful employment practice, or, as the case may be, an unlawful discrimination:
>
> a. For an employer, because of the . . . age. . . of any individual, . . . to refuse to hire or employ or to bar or to discharge or require to retire, unless justified by lawful considerations other than age, from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment;
>
> ***
>
> d. For any person to take reprisals against any person because that person has opposed any practices or acts forbidden under this act or because that person has sought legal advice regarding rights under this act, shared relevant information with legal counsel, shared information with a governmental entity, or filed a complaint, testified or assisted in any proceeding under this act or to coerce, intimidate, threaten or interfere with any person in the exercise or enjoyment of, or on account of that person having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by this act.

35. By its actions alleged here in disciplining plaintiffs and in terminating plaintiffs' employment, United has violated NJLAD, N.J.S.A. 10:5-12(a), (d), willfully and intentionally, treating plaintiffs less favorably than similarly situated younger employees. Plaintiffs' age was a motivating factor in United's actions against them. But for their age, they would not have been terminated from their employment.

36. As a result of United's actions alleged here, plaintiffs have suffered damages and other injuries, including but not limited to monetary loss, lost employment opportunities,

and emotional pain and suffering.

## PRAYER FOR RELIEF

WHEREFORE, plaintiffs respectfully request that this Court grant the following relief:

A. An Order declaring United in willful violation of the ADEA and NJLAD, and enjoining United from further violations of the ADEA and NJLAD;

B. Injunctive relief reinstating plaintiffs to their employment with United, with no loss of seniority or benefits, as if their employment had not been interrupted;

C. Back pay and benefits, from the date of plaintiffs' involuntary termination to the date of reinstatement, plus prejudgment interest;

D. Liquidated damages pursuant to 29 U.S.C. § 216(b) and 29 U.S.C. § 626(b);

E. Compensatory damages, as available through NJLAD, N.J.S.A. 10:5-13;

F. Attorneys' fees and costs; and

G. Such other monetary and equitable relief that the Court finds just and proper.

**PLAINTIFFS DEMAND A TRIAL BY JURY ON ALL ISSUES SO TRIABLE.**

Dated: March 20, 2023

> By: __s/ Jason J. Rozger_____
> Jason J. Rozger
> Menken Simpson & Rozger LLP
> 80 Pine Street, 33rd Floor
> New York, New York 10005
> Phone (212) 509-1616
> Facsimile (212) 509-8088
> jrozger@nyemployeelaw.com
>
> Raymond C. Fay (*pro hac vice to be filed*)
> Fay Law Group PLL
> 1250 Connecticut Avenue, N.W., Suite 700
> Washington, DC 20036
> (202) 263-4604 (tel)
> (202) 261-3508 (fax)
> rfay@faylawdc.com

Dionna Maria Lewis (*pro hac vice to be filed*)
District Legal Group, PLLC
700 Pennsylvania Ave SE, Suite 2098
Washington, D.C. 20003
Tel. (202) 486-3478
Dionna@DistrictLegalGroup.com

*Counsel for Plaintiffs*