UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| CHERYL BENDETSEN, BARBARA MAROVICH, JANICE CURRAN, FRED ESTAÑO, TAMMARA COOK, and MARYSOL CHAPARRO,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED AIRLINES, INC.,<br><br>Defendant. | Civil Action No. 23-01553 (JXN)(MAH)<br><br>**OPINION** |

**NEALS**, District Judge

This matter comes before the Court by way of Defendant United Airlines, Inc.'s ("United" or "Defendant") motion to dismiss Plaintiffs Cheryl Bendetsen, Barbara Marovich, Janice Curran, Fred Estaño, Tammara Cook, and Marysol Chaparro's (collectively "Plaintiffs") Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6). (ECF No. 43.) Plaintiffs opposed the motion (ECF No. 44), and United replied in further support (ECF No. 45). Jurisdiction is proper pursuant to 28 U.S.C. § 1331. Venue is proper pursuant to 28 U.S.C. § 1391. The Court has carefully reviewed the parties' submissions and decides this matter without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1. For the reasons set forth below, United's motion to dismiss is **GRANTED**.

**I.    FACTUAL AND PROCEDURAL BACKGROUND**[1]

Plaintiffs bring this employment action against United for age discrimination and retaliation under the Age Discrimination in Employment Act, 29 U.S.C. §§ 623(a) and (d),

---

[1] When reviewing a motion to dismiss, a court accepts as true all well-pleaded facts in the complaint. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009).

("ADEA") (Count I), and the New Jersey Law Against Discrimination, N.J.S.A. 10:5-12 ("NJLAD") (Count II). (*See* Amended Complaint ("Am. Compl."), ECF No. 32.)

United is a global commercial airline that operates out of multiple domestic hubs, including but not limited to Newark Liberty International Airport ("EWR"). (Am. Compl. ¶ 13.)

Prior to the involuntary terminations of employment challenged here, Plaintiffs served as Flight Attendants/Pursers for United based out of EWR. (*Id*. ¶ 5.) Plaintiffs performed their Flight Attendant duties satisfactorily, received numerous awards and accolades in connection with job performance, and none had received discipline resulting in a loss of pay or warning that would result in termination on further offense. (*Id*. ¶ 6-12.) The Purser job itself is a position of leadership from the standpoint of safety and crew duties. (*Id*. ¶ 14.) Plaintiffs were all over 40 years old when they were terminated from their employment with United in May 2021. (*Id*.)

### A. The March 6, 2021 WhatsApp Chat Incident

Plaintiffs' termination from employment stemmed from their participation in a two-hour private WhatsApp chat among EWR-based United Pursers that occurred on March 6, 2021 (the "March 6 Chat"). (*Id*. ¶ 15.) The March 6 Chat was open to around fifty (50) EWR-based United Pursers. (*Id*.) During the March 6 Chat, Plaintiffs made several statements about Kristof Hering ("Hering"), a junior Flight Attendant based out of United's Dulles hub, who had documented crewmembers for allegedly violating United's COVID-19 mask requirement. (*Id*. ¶ 19.) Plaintiffs claim the March 6 Chat focused on their concerns regarding the "actions taken against older, senior flight attendants," because of photos Hering posted on social media of crewmembers with their faces "clearly visible," and their concern that Hering would target them "amid rumors that [he] was going to transfer to EWR." (*Id*.) Plaintiffs further allege an "unknown source took selective

2

screenshots" of the March 6 Chat and provided it to United. (*Id.* ¶ 20.) The comments made by Plaintiffs during the March 6 Chat include the following:[2]

> *This guy is part of the 5500 was given an emergency xfer [sic] from DC as he has had 6 senior people fired He takes photos of [FA's] and photo shops them and turns them in to the company spread the word he is trouble.*
>
> *The Mole*
>
> *…*
>
> *if he takes my picture, his ass will be in front of a judge*
>
> *…*
>
> *He looks like the Joker without makeup*
>
> *I just heard he has taken COLA[]! Wait till he get[s] our warm welcome*
>
> *Remind me please as to what happens to snitches in prison?*
>
> *…*
>
> *Hmmm. Does he park in the NY/NJ parking lot?*
>
> *…*
>
> *Watch out, there are cameras in the lot.*
>
> *…*
>
> *Okay. Need to know more about what he has done…. this is not good enough gassip [sic]. I am bored right now. Spain's programg [sic] tonight is a bit boring…*
>
> *…*
>
> *My friend from iAd confirms his unsavory credentials. How can I send a photo from my text to this app? A more realistic photo of him in September 2020.*
>
> *…*
>
> *[In response to pictures of Hering being posted in the chat]:*
>
> *He was probably Tinkerbell in Disney.*
>
> *…*
>
> *We got him!*
>
> *Be careful*
>
> *He is not a 'Red Herring'……...*

---

[2] The Court finds that the WhatsApp chat referred to in Plaintiffs' Amended Complaint is central to Plaintiffs' claims, and accordingly, will consider the copy of the WhatsApp Chat provided by United (ECF No. 20-5) in deciding the motion to dismiss without converting the motion to a motion for summary judgment. *In re Burlington Coat Factory Sec. Litig.,* 114 F.3d 1410, 1426 (3d Cir. 1997).

3

> *So what's the story about the 6 seniors being fired… that's alot* [sic] *of power.. anything about that story?*
>
> *We need to make his life miserable*
>
> *And the thing about his mother…that is just effing sick! This is the kind of thing that needs to get leaked to on* [sic] *of those airline bloggers!"*
>
> *That might shut him up AND the company if its leaked UA approves of it*
>
> *…*

(March 6 Chat (redacted), ECF No. 20-5 at *1-11.)[3]

### B. United's Investigation and Termination of Plaintiffs' Employment

After receiving the screenshots of the March 6 Chat, United began an investigation into Plaintiffs' conduct. (*Id.* ¶¶ 20, 38-39.) Following its investigation, United terminated Plaintiffs for bullying, harassment, and retaliation in violation of United's Working Together Guidelines ("Guidelines"), governing United's employment of flight attendants and other personnel, which are referred to in the Collective Bargaining Agreement ("CBA") between United and Plaintiffs' union, the Association of Flight Attendants ("AFA"). (*Id.* ¶ 21; *see also* ECF No. 20-4.)

Plaintiffs allege that United discriminated against them based on age during the investigation and termination process. (Am. Compl. ¶ 38.) Plaintiffs allege that

> 1) the extreme punishment of summary dismissal of plaintiffs for minor, questionable "offenses" is way out of line with far lesser penalties exacted against young flight attendants for truly serious offenses; and 2) United has a highly reticulated progressive disciplinary system, with built[-]in due process protections, that was bypassed in the case of the older flight attendants.

(*Id.* ¶ 2.) Specifically, Plaintiffs assert that the charges against them—bullying, harassment, and retaliation- by their nature, "require some type of confrontation, direct or indirect, between the accused and the target of the alleged nefarious activity." (*Id.* ¶ 35.) Plaintiffs contend, however, that because they did not know Hering or communicate with him directly, United's

---

[3] Pin-cites preceded by an asterisk (*) refer to the pagination atop the CM/ECF header.

"characterizations of [their] actions toward Hering are totally false and did not occur, making United's accusations and reasons for termination wholly pretextual." (*Id*. ¶ 20.)

Plaintiffs allege they "experienced unlawful age discrimination in employment when they were subjected to career-ending disciplinary actions by United in ways not experienced by significantly younger flight attendants, including those under age 40." (*Id*. ¶ 30.) Specifically, Plaintiffs contend that progressive discipline was not followed in their cases, where their punishment for a first offense was termination of employment. (*Id*. ¶ 37.) Plaintiffs claim that United "has engaged in a pattern or practice of discriminating against other older, senior flight attendants." Plaintiffs offer examples of older flight attendants who they allege were discriminated against based on age by United:

(1) V.P., an experienced Purser based at Washington-Dulles with an exemplary employment record, more than 40 years of service, with no adverse disciplinary record, who was photographed by Kristof Hering while not wearing a COVID mask, and without following progressive discipline or the example of mask-related progressive discipline stated in the Guidelines, was removed from Purser service and placed him on a two-year Level 4 Performance Warning.

(2) K.C., M.R., and M.O., Washington-Dulles based Pursers between 52 and 69 years of age, with more than 30 years of Purser service, without no disciplinary records, who, without the benefit of progressive discipline, were terminated by United for dishonesty and lack of candor based on accounts they gave about flights where Hering, or someone they believed to be Hering, was also a crewmember. In arbitration, United was found to have acted without just cause in terminating these Pursers' employment, and they were reinstated with benefits, including one year of back pay.

(3) S.G., a 55-year-old flight attendant, was wrongfully terminated despite a discipline-free work record when United failed to conduct a thorough investigation. She was terminated for discussing a paintball party with coworkers on social media. After two and a half years of being held out of service, S.G. was returned to work with a Level 4 performance warning.

(4) M.F., age 61, was terminated after her flight was canceled during United's irregular summer operations and she was stranded. After being unable to contact the United crew desk for hours and finding no hotels available, she went home due to fatigue. She was accused of missing a trip the following day and was terminated, instead of receiving a warning with points, as prescribed under United's disciplinary system.

5

(*Id*. ¶ 31(a)-(b).)

Plaintiffs claim that younger flight attendants, including those under age 40, have not been subjected to such harsh treatment. (*Id*. ¶ 32.) According to Plaintiffs, publication on many United-flight attendant-related Facebook pages by younger crewmembers causes "real harm but goes unpunished." (*Id*.) For example, Plaintiffs claim that "especially egregious comments" were made by younger crewmembers on a Facebook page titled "The Forgotten 5500,"[4] of which Hering was an active member, which included "threats of bodily harm, extensive harassment and a barrage of insults directed at the "Senior Mamas," without punishment by United." (*Id*.) Plaintiffs provide the following examples of United's "more favorable treatment" of younger employees:

(1) Hering, a Dulles-based flight attendant who allegedly took photos of the United crew and posted them on the Forgotten 5500 Facebook site.

(2) A.B., a thirty-something Washington-Dulles-based flight attendant, allegedly posted a video of herself applying makeup without a mask during the COVID-19 pandemic and did not receive discipline "to plaintiffs' knowledge."

(3) Y.M.G., a twenty or thirty-something Washington-Dulles-based flight attendant who allegedly posted online the following comments:
*Honestly, I swear some don't retire just out of ego and to mess with us. Some can't even push the cart let alone open a door in an emergency. Whenever I got one of those corpses on board I always planned ahead on how to manage an emergency. I would open the door and throw her out first to "help at the bottom"*

(4) M.I., a thirty-something Chicago-based flight attendant who allegedly posted:
*So next time you and your 1972 Seniority land here …. DUMP YOUR ICE AND RESTOCK YOUR CART!*

(5) J.M.B., a twenty-something Chicago-based flight attendant who allegedly posted:
*Union needs to know that most of the senior mamas are knocking on deaths door already.*

(6) Q.G., a former supervisor under age 40 with an unknown base location, who allegedly engaged in trip trading, which United warned him about but did not

---

[4] "The Forgotten 5500" consists of "the most junior 5,500 United flight attendants furloughed during the COVID-19 pandemic." (*Id*. ¶ 32.)

>discipline him for. Plaintiffs also allege Q.G. discussed "sexually explicit actions, without disciplinary action."

(*Id.* ¶ 32(a)-(e).)

Finally, Plaintiffs allege that "[t]he discrimination against them on the basis of age continued during United's investigation and termination process." (*Id.* ¶ 38.) Plaintiffs claim that United failed to or only partially provided Plaintiffs with the documents it intended to rely on in its investigation prior to their respective investigatory meetings. (*Id.* ¶ 38.) Plaintiffs state that they "asserted their rights to communicate freely among themselves[, ] be free from discriminatory accusations and severe punishment, and to be free from arbitrary age discrimination." (*Id.* ¶ 39.) Plaintiffs claim that in retaliation for asserting these rights, "United used [their] responses in the investigation as additional reasons to terminate their employment and to determine [their] fate in truncated proceedings absent the usual protections of progressive discipline and other policies governing disciplinary proceedings." (*Id.*)

On March 20, 2023, Plaintiffs filed a two-count Complaint against United alleging age discrimination and retaliation under the ADEA and NJLAD. (*See* ECF No. 1.)

Plaintiffs also grieved their termination in arbitration under the CBA. (Am. Compl. ¶ 27.) On June 8, 2023, the arbitral panel issued a decision reinstating five of the six Plaintiffs as Flight Attendants, not Pursuers, without back pay, and placed them on Performance Warning Level 4 for a period of two years. (*Id.* ¶ 28.) The panel upheld United's termination of Plaintiff Marovich. (*Id.* ¶ 29.) The panel characterized Marovich as the "ringleader" who "spearheaded" the March 6 Chat and made the "most inflammatory" comments about Hering. (*Id.*)[5]

---

[5] Plaintiffs allege that the arbitral record does not support these allegations. (*Id.*)

On June 26, 2023, United moved to dismiss the Complaint pursuant to Rules 12(b)(6) and 12(b)(1). (ECF No. 17.) The Court held oral argument on United's motion on March 18, 2024. (*See* Transcript of Oral Argument ("Tr."), ECF No. 31.) United's motion was denied in part and granted in part by the Court on the record. (*See id*; *see also generally* ECF No. 30.) In so ruling, the Court found that Plaintiffs' claims were based on a right "separate and apart from the CBA and would not be preempted in that circumstance." (Tr. 26:18-23.) As a result, United's jurisdictional challenge to the Complaint pursuant to Fed. R. Civ. P. 12(b)(1) was denied without prejudice. (ECF No. 30 at 1.) The Court granted United's motion to dismiss both Counts of the Complaint pursuant to Fed. R. Civ. P. 12(b)(6) without prejudice. (*See id*.) With respect to Plaintiffs' age discrimination claims, the Court found the Complaint failed to make a connection between the adverse employment action and Plaintiffs' claim of age discrimination under the ADEA and NJLAD (Tr. 28:1-15.) In so finding, the Court reasoned, "[o]ther than what Hering did with regard to Dulles and … the conversations that the employees had amongst themselves, there haven't been any actions related to their age in Newark." (Tr. 27:14-17.) As to Plaintiffs' retaliation claims, the Court found that "[t]he protected activity that [Plaintiffs] are asserting, in reviewing the complaint again, is basically related to their right to speak freely when the investigation was …that right to speak freely -- … it is not clear to the Court how that response is actually a protected activity." (Tr. 27:18-25.) Plaintiffs were granted leave to amend. (*See* ECF No. 30 at 2.)

Plaintiffs filed their Amended Complaint on May 2, 2024. (ECF No. 32.) The Amended Complaint alleges the same two counts of age discrimination and retaliation under 29 U.S.C. § 623(a) and (d) of the ADEA and the NJLAD, N.J.S.A 10:5-12. (*Id*.) Plaintiffs seek declaratory and injunctive relief, full reinstatement to their employment with United, with no loss of seniority or benefits, back pay and benefits, from the date of plaintiffs' involuntary termination to the date of

8

full reinstatement, plus prejudgment interest, liquidated and compensatory damages, attorneys' fees and costs. (*Id*. at 18.)

On July 31, 2024, United moved to dismiss the Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6) and 12(b)(1). (*See generally* ECF No. 43.) Plaintiff opposed the motion (ECF No. 44), and United replied in further support (ECF No. 45). This motion is now fully briefed and ripe for the Court to decide.

## II.  LEGAL STANDARD

### A.  Rule 12(b)(1) - Lack of Subject Matter Jurisdiction

Under Rule 12(b)(1), a party may bring a motion to dismiss for lack of subject matter jurisdiction. *See* Fed. R. Civ. P. 12(b)(1). There are two types of subject-matter challenges under Rule 12(b)(1): "either a facial or a factual attack." *Davis v. Wells Fargo*, 824 F.3d 333, 346 (3d Cir. 2016). On a facial attack, the court "accept[s] the complaint's well-pled allegations as true, and review[s] 'the allegations of the complaint and documents referenced therein and attached thereto[ ] in the light most favorable to the plaintiff." *Manivannan v. United States Dep't of Energy*, 42 F.4th 163, 169 (3d Cir. 2022) (quoting *Gould Elecs. Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000)). On a factual attack, "the court 'is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case.'" *Davis*, 824 F.3d at 346 (quoting *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977)).

### B.  Rule 12(b)(6) - Failure to State a Claim

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." For a complaint to survive dismissal under this rule, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp.*

9

*v. Twombly*, 550 U.S. 544, 570 (2007)). In evaluating the sufficiency of a complaint, "[a]ll allegations in the complaint must be accepted as true, and the plaintiff must be given the benefit of every favorable inference to be drawn therefrom." *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011) (citations omitted). A court must only consider "the complaint, exhibits attached to the complaint, matters of the public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010). "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

### III.   DISCUSSION

#### A.   Subject Matter Jurisdiction—Railway Labor Act Preclusion/Preemption[6]

United argues that Plaintiffs' discrimination and retaliation claims are preempted by the Railway Labor Act, 45 U.S.C. § 151, *et seq*. ("RLA"). (*See* ECF No. 43-1 at 25-32.)[7] The Court disagrees.

Congress enacted the RLA "to promote stability in labor-management relations by providing a comprehensive framework for resolving labor disputes." *Hawaiian Airlines, Inc. v. Norris*, 512 U.S. 246, 252, 114 S.Ct. 2239, 129 L.Ed.2d 203 (1994) (citing *Atchison, Topeka & Santa Fe Ry. Co. v. Buell*, 480 U.S. 557, 562 n.9, 107 S.Ct. 1410, 94 L.Ed.2d 563 (1987)). "The RLA, which applies to the airline industry pursuant to 45 U.S.C. §§ 181–88," and "alters the traditional jurisdictional inquiry." *Ass'n of Flight Attendants-CWA, AFL-CIO v. United Airlines,*

---

[6] The Supreme Court has explained that state-law claims that require interpretation of a CBA would be "preempted" while claims based on other federal laws would be "precluded," but the analysis is essentially the same. *Markovich v. Union R.R. Co., LLC,* No. CV 21-1596, 2022 WL 3334278, at *2 (W.D. Pa. June 8, 2022), *report and recommendation adopted in part, rejected in part*, No. 2:21-CV-1596, 2022 WL 2980548 (W.D. Pa. July 28, 2022) (citing *Hawaiian Airlines, Inc. v. Norris*, 512 U.S. 246, 259 n.6, 114 S.Ct. 2239, 129 L.Ed.2d 203 (1994)).

[7] In invoking the RLA as the basis for its Rule 12(b)(1) motion to dismiss, United is factually challenging the Court's subject matter jurisdiction. Thus, evidence outside the pleadings is properly considered, including the CBA between United and Plaintiffs' union, the AFA. (*See* ECF No. 20-4.)

*Inc.*, 583 F. Supp. 3d 162, 169 (D.D.C. 2022), *dismissed*, No. 22-7015, 2023 WL 5813832 (D.C. Cir. Sept. 7, 2023) (citing *Int'l Ass'n of Machinists, AFL-CIO v. Cent. Airlines, Inc.*, 372 U.S. 682, 685–89, 83 S.Ct. 956, 10 L.Ed.2d 67 (1963). To effectuate its purpose, the RLA requires arbitration of two classes of disputes, "major" disputes, which concern the formation of CBAs or efforts to secure them, and "minor" disputes, which involve "controversies over the meaning of an existing [CBA] in a particular fact situation." *Hawaiian Airlines,* 512 U.S. at 253, 114 S.Ct. 2239 (internal citations and quotations omitted).

Here, rather than merely alleging that United failed to follow its investigation and disciplinary processes as outlined in the parties' CBA, Plaintiffs challenge United's motives and argue that United's deviations from these processes are pretextual, alleging that United applied them in a manner adverse to senior flight attendants but advantageous to younger employees. (*See* Am. Compl. ¶¶ 30, 35-40.) Plaintiffs are, thus, challenging United's motives in taking adverse action in violation of rights or obligations that exist independently of the CBA. *See Stouffer v. Union R.R. Co., LLC*, 85 F.4th 139, 144 (3d Cir. 2023) ("Generally, the RLA will not bar a plaintiff from bringing a claim under an independent federal statute in court.") (quoting *Giles v. National Railroad Passenger Corp.*, 59 F.4th 696, 702 n.3 (4th Cir. 2023)). Plaintiffs are alleging age discrimination and retaliation in violation of the ADEA and NJLAD. The fact that Plaintiffs reference sections of the parties' CBA in asserting their claims does not, in and of itself, preempt their claims, because what the Court is being asked to look at are "'purely factual questions' about the employees' actions and [United's] conduct." *Stouffer*, 85 F.4th at 146. As a result, the Court finds that Plaintiffs' claims are not preempted by the RLA, and United's motion to dismiss will be denied to the extent that it relies upon Fed. R. Civ. P. 12 (b)(1).

### B. Failure to State a Claim

As noted above, Plaintiffs assert two causes of action for age discrimination and retaliation under 29 U.S.C. § 623(a) and (d) of the ADEA (Count One); and the NJLAD, N.J.S.A 10:5-12 (Count Two). (*See* Am. Compl. ¶¶ 43-51.) United contends that Plaintiffs' Amended Complaint fails to establish a cognizable cause of action that is plausible on its face and upon which relief may be granted. (*See* ECF No. 43-1 at 1-25.) The Court agrees.

1. <u>Plaintiffs' Age-Based Discrimination Claims</u>

Plaintiffs' age discrimination claims sounding in disparate treatment are based on allegations that Hering and certain other "younger, junior" Flight attendants made posts on social media that included "threats of bodily harm, extensive harassment and a barrage of insults directed at the senior crewmembers and were not subjected to the same "harsh treatment" as Plaintiffs. (*Am. Compl.* ¶ 30-37, 46-47.) The "harsh treatment" Plaintiffs claim they were subjected to consists of the allegation that United did not follow the "flight attendance disciplinary system," which calls for "warnings in the case of initial violations." (*Id.* ¶ 37.)

The ADEA prohibits employers from "discharg[ing] any individual or otherwise discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). The same standards of proof govern age discrimination claims under the ADEA and NJLAD. *See DeJoy v. Comcast Cable Communications Inc.*, 968 F. Supp. 963, 979 (D.N.J. 1997). To establish a disparate treatment claim, a plaintiff must first establish that they: (1) are a member of a protected class; (2) qualified for the position in question; (3) suffered an adverse employment action; and (4) that adverse employment action gives rise to an inference of unlawful discrimination." *Tourtellotte v. Eli Lilly & Co.*, 636 F. App'x 831, 842 (3d Cir. 2016).

With respect to the fourth prong, a plaintiff must show that defendant would not have taken the adverse employment action – termination – "but for" their age. *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 177 (2009) (recognizing "but for" requirement that age played a substantial motivating factor in the adverse employment action). On a motion to dismiss, a plaintiff need not formally plead a *prima facie* case. *See Martinez v. UPMC Susquehanna*, 986 F.3d 261, 266 (3d Cir. 2021). Instead, a plaintiff need only "allege enough facts to 'raise a reasonable expectation that discovery will reveal evidence of [each] necessary element.'" *Martinez*, 986 F.3d at 266 (quoting *Fowler v. UPMC Shadyside*, 578 F.3d 203, 213 (3d Cir. 2009)).

Here, United does not dispute that Plaintiffs have met the first three elements, Plaintiffs (1) are over 40 years old, and therefore members of a protected class (Am. Compl. ¶¶ 7-12); (2) averaged over 37 years of flight attendant service, had exceptional service records in terms of job performance, attendance, and as Pursers, served in a position of leadership as part of the flight crew (*Id*. ¶ 14); and (3) suffered an adverse employment action when they were terminated from their employment in May 2021 (*Id*.¶¶ 7-12, 14.) Instead, United argues that Plaintiffs cannot establish the fourth prong, that the adverse employment action gives rise to an inference of unlawful discrimination. The Court agrees.

Plaintiffs' age discrimination claims are based on speculative allegations about "junior," "younger" flight attendants – none of which support that Plaintiffs' age was the "but for" reason for their terminations. Specifically, Plaintiffs allege that United did not discipline certain younger flight attendants who posted comments at unknown points in time on Facebook or discipline Hering, the target of the March 6 Chat, for posting pictures of crewmembers on social media. However, as noted by United, Plaintiffs do not allege that the conduct of these younger comparators occurred on United's information systems or that this conduct was ever reported to

13

United. Further, Plaintiffs do not allege that any of the younger, junior flight attendants were afforded better treatment or protections in any investigative proceeding compared to the "harsh" treatment they purportedly experienced. In other words, there are no facts connecting United's actions with disparate treatment based on age animus. Courts in the Third Circuit routinely dismiss claims on Fed. R. Civ. P. 12(b)(6) grounds when the plaintiff offers only vague conclusory allegations to support an inference of discrimination. *See, e.g., Caviness v. Aramark Corr. Servs., LLC*, No. CIV. 14-07068 JEI, 2015 WL 1888246, at *2 (D.N.J. Apr. 15, 2015) (plaintiff's allegation that adverse action was due to his age and race was the type of conclusory allegation the court was not required to accept); *Sangi v. Warren Hospital*, No. CIV.A. 10-4571 JAP, 2011 WL 4857933, at *2 (D.N.J. Oct. 11, 2011) ("Alleging merely that Plaintiff 'believes' these actions were taken against [her] because of [her] age is not sufficient to meet the federal pleading requirements where plaintiff was told she was terminated for violating patient confidentiality rules by keeping patient files in her office but claimed all other employees routinely engaged in the same conduct").

Plaintiffs' allegations of more favorable treatment of younger flight attendants like the "Forgotten 5500" and their reference to Hering's purported violation of United policy by taking and posting pictures of co-workers are "comparator" allegations that are insufficient to state a claim for disparate treatment based upon age as a matter of law. When analyzing such comparator evidence, Courts examine "whether the employees dealt with the same supervisor, were subject to the same standards, shared similar job responsibilities, and the nature of the misconduct." *Phillips v. Starbucks Corp.*, 624 F.Supp.3d 530, 542 (D.N.J. Aug. 31, 2022). The purported comparators in Plaintiffs' Amended Complaint are not comparators either factually or legally. Specifically, these comparators are not based at EWR, like the Plaintiffs; they do not have the same supervisors

as the Plaintiffs; they did not engage in similar conduct to the Plaintiffs; the Plaintiffs do not allege that their conduct was reported to United; and it is unclear when the alleged incidents that these comparators were involved with occurred. Courts customarily grant dismissal when the complaint alleges disparate treatment but fails to allege comparator evidence that rises above mere speculation. *See, e.g., Grant v. United States Post Off.*, No. 19-9107, 2021 WL 5076415, at *5 (D.N.J. Nov. 1, 2021) (granting motion to dismiss where complaint "lack[ed] allegations to establish that these employees were similarly situated to Plaintiff"), *aff'd*, No. 22- 2933, 2023 WL 3816524 (3d Cir. June 5, 2023). The Court finds that Plaintiffs have not established the fourth prong, as Plaintiffs have failed to allege sufficient facts to support that their termination was motivated by age. Thus, Plaintiffs fail to plead sufficient facts to connect United's actions with disparate treatment based upon age animus. Accordingly, United's motion to dismiss will be granted as to Plaintiffs' age discrimination claims in Counts One and Two of the Amended Complaint.

    2. Plaintiffs' Retaliation Claims

Plaintiffs assert retaliation claims under the ADEA (Count One) and NJLAD (Count Two). (Am. Compl. ¶ 45, 49.) In support of their retaliation claims, Plaintiffs allege that United failed to provide them with "all documents, reports, statements, or other information that the company intended to use as a basis for questioning or disciplining the flight attendant before their investigative meetings." (*Id*. ¶ 38.) Further, Plaintiffs allege that during United's investigation, they "asserted their rights to communicate freely among themselves and to be free from discriminatory accusations and severe punishment" and that United used their responses during the investigation as additional reasons to terminate their employment. (*Id*. ¶ 39.)

To establish a *prima facie* case of retaliation, Plaintiffs must show: (1) they engaged in protected activity; (2) United took an adverse employment action after or contemporaneous with the protected activity; and (3) a causal link exists between their protected activity and their terminations. *Abramson v. William Paterson College of New Jersey*, 260 F.3d 265, 286 (3d Cir. 2001) (citation omitted). Protected activity "requires an objectively reasonable belief that the activity the plaintiff opposed constituted unlawful discrimination under the relevant statute." *Daniels v. Sch. Dist. of Philadelphia*, 776 F.3d 181, 193 (3d Cir. 2015) (external citation and quotation omitted). "Not every complaint or report entitles its author to protection from retaliation," meaning "[g]eneral complaints of unfair treatment will not suffice." *Davis v. City of Newark*, 417 F. App'x 201, 202 (3d Cir. 2011).

When considering what constitutes protected activity, courts look to "the message being conveyed rather than the means of conveyance." *Kaprowski v. Esti Foods, LLC*, No. CV2114693ESMAH, 2022 WL 2289559, at *5 (D.N.J. June 24, 2022) (quoting *Curay-Cramer v. Ursuline Academy of Wilmington*, 450 F.3d 130, 135 (3d Cir. 2006)). The message conveyed must make the plaintiff's opposition to discriminatory treatment clear by stating, either implicitly or explicitly, "that a protected characteristic was the basis for the adverse employment action." *Id.* Plaintiffs do not satisfy that standard.

Here, the Court finds that Plaintiffs fail to plead facts in support of their allegation that they engaged in protected activity. Specifically, the vague claims that "the required information [which United was supposed to provide them] was missing, incomplete, or partially provided only minutes before the[ir] [investigatory] meeting" (Am. Compl. ¶ 38), and that United terminated them "for plaintiffs' exercising their right to be free from age discrimination" (Am. Compl. ¶ 39), without more is insufficient to support a claim for retaliation. In terms of Plaintiffs' contention that they

"asserted their rights to communicate freely…," Plaintiffs do not allege that they raised any issues about their age or age discrimination (or any other conduct prohibited under the ADEA or NJLAD) during the investigation. Moreover, while in their opposition brief, Plaintiffs allege, for the first time, that "[b]y expressing to [United's] investigators that Plaintiffs were the targets of a discriminatory investigation against only older flight attendants while similar or worse policy violations by younger flight attendants went unchecked," they engaged in protected activity (ECF No. 44 at 30), this allegation is not included in their Amended Complaint, and the Court cannot consider arguments of counsel in a brief. *See Com. of Pa. ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988) ("[T]he complaint may not be amended by the briefs in opposition to a motion to dismiss.") (citation omitted). Since Plaintiffs' Amended Complaint fails to allege any facts establishing that they engaged in conduct protected by the ADEA or NJLAD, or that United retaliated against them for engaging in protected conduct, their retaliation claims will be dismissed.

Accordingly, United's motion to dismiss will be granted as to Plaintiffs' retaliation claims in Counts One and Two of the Amended Complaint.

## IV. CONCLUSION

For the foregoing reasons, United's motion to dismiss (ECF No. 43) Plaintiff's Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(1) as preempted by the Railway Labor Act is **DENIED.** United's motion to dismiss Plaintiffs' Amended Complaint (ECF No. 32) pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim is **GRANTED,** and Plaintiffs' Amended Complaint is **DISMISSED** *without prejudice.* Plaintiff is hereby granted leave to amend. An appropriate Order accompanies this Opinion.

**DATED:** March 26, 2025

**JULIEN XAVIER NEALS**
**United States District Judge**

17